IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABDUL LOVE, | |
| Plaintiff, | |
| v. | Case No. 22-cv-2340-NJR |
| DAVID MITCHELL, LATOYA HUGHES, ROB JEFFREYS, and RICHARD ARNOLD, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Abdul Love, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] This matter is before the Court on a motion for summary judgment filed by Defendants David Mitchell, Latoya Hughes, Rob Jeffreys, and Richard Arnold (Doc. 55).[2] Defendants argue that Love

---

[1] Although the Complaint was initially filed by Abdul Love, Jessie Williams, and Brandon Jackson, Williams and Jackson were severed from Love's claims. Brandon Jackson's claims were severed from the case prior to a review of the merits of the claims because his claims did not arise out of the same occurrence and did not have the same questions of law or facts (Doc. 22). Jessie Williams and Abdul Love were initially allowed to proceed together on their claims (Doc. 25). After the filing of Defendants' motion for summary judgment, Jessie Williams's claims were severed into a new case because Williams was transferred to another prison and his transfer made coordinating and litigating the case as joint plaintiffs difficult (Doc. 59).

[2] Defendant Rob Jeffreys was inadvertently terminated from the docket when Latoya Hughes was substituted in his place as the proper defendant for Count 2 (See Doc. 39, p. 1 n. 1). Rob Jeffreys is still a defendant, in his individual capacity, for the claims in Count 1.

1

failed to exhaust his administrative remedies prior to filing his Complaint. Love filed a response in opposition to the motion (Doc. 62). Defendants filed a reply (Doc. 64).

## BACKGROUND

On October 7, 2022, Plaintiff Abdul Love filed his Complaint alleging violations of his religious liberties pursuant to the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Specifically, Love alleged that he was a practicing Muslim who sought to participate in Ramadan from April 1, 2022, thru April 30, 2022 (Doc. 25, p. 2). The observation of Ramadan requires Muslims to abstain from food and drink from sunrise to sunset and to break their fast with dates and water prior to evening prayers (*Id.*). To participate in Ramadan, Love contacted Chaplain Richard Arnold and requested participation in the fast as directed by the prison on its institutional channel (*Id.*). At the beginning of Ramadan, Love was allowed to participate in the fast, but he noted that the dinner trays were not delivered at the appropriate time prior to sunset to allow participating prisoners to break their fast at the prescribed time (*Id.*). Because Love did not receive his meal at the prescribed time, he was forced to break his fast with his own food (*Id.*).

In addition to the issues with the food trays, Love was also denied the ability to participate in other aspects of the holiday (*Id.* at p. 3). Love only received meals in his cell, and there were no instructions about exceptions or repercussions for those inmates who broke their fast early (*Id.*). Love was not allowed to participate in congregational prayers except during the normal scheduled services, and he was not allowed to participate in the feast at the end of Ramadan (*Id.*).

After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Love was allowed to proceed on the following counts:

> Count 1: First Amendment claim against David Mitchell, Richard Arnold, and Rob Jeffreys for substantially burdening Love's practice of religion during the month of Ramadan.
>
> Count 2: RULIPA claim against Latoya Hughes for substantially burdening Love's practice of religion during the month of Ramadan.[3]

(Doc. 25, p. 3).

The parties concede that only one grievance is relevant to Love's claims.

**April 9, 2022 Grievance (Grievance # 1077-04-22):[4]**

On April 9, 2022, Love submitted an emergency grievance about the lack of information regarding the ability to participate in Ramadan (Doc. 55-2, pp. 5-6). Love complained that other than the memo on the prison television channel, there was no additional information for inmates about the Ramadan rules, feeding schedule, available activities, and overall expectations regarding participation in the fast (*Id.* at p. 5). Love complained that there was also no information on who to contact with any questions or concerns regarding available activities during the month of Ramadan (*Id.*). He noted that Chaplain Arnold never responded to requests about religious concerns (*Id.* at p. 6).

Love further complained that he failed to receive dinner trays at the appropriate time to break his fast. Love noted that the trays sat for over two hours after being delivered by dietary and complained that the delay was caused by racist Islamophobic staff members (*Id.*). Love noted that he had a journal detailing when the trays were delivered to the cellhouse by dietary

---

[3] Hughes was automatically substituted for the official capacity claim because, at the time Defendants filed their Answer, Jeffreys was no longer the director of IDOC (Doc. 37, p. 1 n. 1).
[4] Although Love also notes in his response that he filed another grievance about his issues with Ramadan and access to meal trays in March 2024 (Doc. 62, pp. 9, 15-16), Love acknowledges that he must exhaust his administrative remedies *prior* to filing a lawsuit (*Id.* at pp. 5-6). He also acknowledges that the only grievance filed prior to his lawsuit was his grievance dated April 9, 2022.

staff and when the inmates received the trays. He noted that camera footage would also support his claim.

In his request for relief, Love requested that he receive his evening meal tray no later than 20 minutes after dietary delivered the tray to the cellhouse. He also requested a memorandum further detailing inmate and staff obligations and requirements during Ramadan. Love also asked that staff's unprofessional and racist conduct be stopped.

On April 22, 2022, Counselor K. Smith responded to the grievance, noting that the grievance failed to include dates of the incidents cited by Love in violation of grievance rules (*Id.* at p. 5).

The Chief Administrative Officer ("CAO") received the grievance on April 29, 2022, and marked the grievance as an emergency (*Id.*).

On May 2, 2022, the grievance officer reviewed Love's grievance (*Id.* at pp. 3-4). In response to Love's allegations, the grievance officer spoke with Chaplain Arnold and the prison dietary (*Id.* at p. 4). Chaplain Arnold noted that Muslim inmates are allowed to participate in Ramadan and the inmate handbook makes clear that any questions regarding religious services and participation should be directed to the chaplain. Chaplain Arnold noted that all information regarding participation was posted on the television and no other information was provided to inmates. Inmates were directed to contact the chaplain if they wanted to participate. As to Love specifically, Chaplain Arnold noted that Love was assigned to the Ramadan list and participated in two weekly chapel services. If Love had additional questions, he could contact Chaplain Arnold directly (*Id.*).

As to the dietary concerns, dietary noted that they were unable to investigate Love's complaints because he failed to provide the dates at issue, but dietary assumed Love was referring to evening meals. Evening meals for Ramadan were delivered to the cellhouse at 7:50 p.m. The grievance officer also noted that she reviewed video footage from a few random dates to determine when inmates received their trays. Trays were delivered to the cellhouse between 7:15 p.m. and 8:00 p.m. and inmates received the trays between 8:30 p.m. and 9:00 p.m. (*Id.*). Trays were only delivered after inmates returned to their cells after dayroom. In light of the grievance officer's findings, the grievance officer recommended the grievance be denied (*Id.* at p. 3). On May 9, 2022, the CAO agreed with the denial (*Id.*).

4

> On May 10, 2022, Love appealed the grievance to the Administrative Review Board ("ARB") (*Id.* at p. 3). The ARB noted that although Love complained of religious discrimination during April 2022, he failed to provide enough information about staff not timely delivering meal trays (*Id.*). The ARB, however, denied the grievance because the issue was appropriately addressed by the facility and the claims of misconduct were unsubstantiated (*Id.*).

Defendants argue that Love failed to exhaust his administrative remedies because he failed to identify any of the named Defendants in his grievance. Defendants acknowledge that Love's grievance mentions that "Chaplain Arnold doesn't respond to request[s] anyway" but argue that the grievance fails to allege any action or inaction on Arnold's part. Defendants argue that the grievance complains about the actions of correctional staff delaying his dinner trays, rather than any delay caused by Arnold, Warden Mitchell, or Rob Jeffreys. Defendants further argue that the grievance does not mention the lack of group prayer opportunities or the failure to provide the feast at the end of Ramadan. In his response, Love argues that he exhausted his administrative remedies by fully exhausting his April 9, 2022 grievance (Doc. 62, pp. 10-11). He also argues that Defendants violated Federal Rule of Civil Procedure 11 by presenting their motion in bad faith. Love argues that Defendants were aware that there was no legal basis to argue that Love failed to exhaust his grievance (*Id.* at p. 12).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison

Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the

6

> plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Love was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the

7

grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should

8

be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material facts, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Defendants argue that Love failed to properly identify them in his grievance dated April 9, 2022. Although exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaint." *Maddox*, 655 F.3d at 722. The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject

9

of or who is otherwise involved in the complaint." 20 Ill. Admin. Code §504.810(c). An inmate does not have to specifically identify the individual by name, but he must include as much descriptive information as possible. *Id*.

Love's grievance provided sufficient information for grievance officials to address his complaints about the timeliness of his dinner trays during the month of Ramadan. He specifically complains about the delays in receiving the trays. Although Defendants argue that the grievance failed to properly identify anyone associated with those complaints, Love does mention Chaplain Arnold, noting that he does not respond to any complaints. Further, the grievance office sought Arnold's response for the grievance, noting that he handled requests for participation in the fast as well as "any questions regarding religious matters." (Doc. 55-2, p. 4). The ARB also noted that the grievance was about delivering trays and the lack of information regarding the participation in Ramadan (*Id*. at p. 2). Thus, the grievance served its purpose of allowing officials to investigate Love's claims about timely meal trays. *See Maddox*, 655 F.3d at 722 ("[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action."). Officials were also able to identify Chaplain Arnold as the official in charge of those determinations and question him in response to the grievance. Thus, Love's grievance served to exhaust his claims against Chaplain Arnold as it relates

10

to Love's receipt of dinner trays during Ramadan. His grievance also served to exhaust his claim in Count 2 for the same violation pursuant to RLUIPA.[5]

Love's grievance failed, however, to identify Warden David Mitchell or Director Rob Jeffreys. The grievance form directs an inmate to include a description of what happened including "the name or identifying information for each person involved." (Doc. 55-2, p. 5). *See also* 20 Ill. Admin. Code § 504.810(c). Although an inmate is not required to specifically name a potential defendant, he "must provide some identifying information about the accused individuals" and "enough information about who caused the grieved of problem so that a prison can properly investigate and resolve [the grievance]." *Jackson v. Esser*, 105 F. 4th 948, 960 (7th Cir. 2024). Love's grievance is labeled as complaining about staff conduct, and the grievance complains about the racist, Islamophobic staff at Pinckneyville that failed to timely pass out the dinner trays (Doc. 55-2, p. 6). He does not refer to Mitchell or Jeffreys by name, nor does he refer to any actions attributed to the warden or director. There is simply nothing in Love's grievance that would give officials "a fair opportunity to address" any complaints about the warden or director. *See King v. Dart*, 63 F. 4th 602, 608 (7th Cir. 2023). Thus, the grievance fails to exhaust the claims against David Mitchell and Rob Jeffreys.

---

[5] Although Defendants argue that the grievance failed to identify Hughes by name, Director Hughes is only in the case in her official capacity. She was added to the case, in her official capacity as director of IDOC, as the proper defendant for injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Love's grievance also does not serve to exhaust his claims regarding participation in congregational prayers and the feast at the end of Ramadan. Love argues in his response that his claims regarding his participation in prayers and the feast should be deemed exhausted because he was not required to "file multiple, successive grievances raising the same issue." *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, the Seventh Circuit found that the inmate's grievance "centered around continuing prison policies, including allegedly illegal lockdowns, and one occurrence of notice from [the prisoner] was sufficient to give the prison a chance to correct the problems." *Id*. But the Seventh Circuit noted that an inmate is required to file a separate grievance "if the underlying facts or the complaints are different." *Id*. For instance, in *Bowers v. Dart*, 1 F.4th 513, 517-18 (7th Cir. 2021), the Seventh Circuit found that a grievance complaining about officers' failure to respond *during* an attack did not serve to exhaust the claim that officers failed to protect the plaintiff *before* the attack. The Seventh Circuit noted that claims in the grievance were "substantively distinct from the allegations in [the plaintiff's] federal complaint." *Id*. at 517. More recently, the Seventh Circuit found that a grievance about the lack of water in an observation cell did not serve to exhaust claims about other issues with the same cell, including the presence of feces and chemical agents, because those claims were substantively distinct from the claims in the grievance. *Jackson*, 105 F. 4th at 959-61.

In this case, Love's claim in his grievance, that he was denied timely dietary trays to break his fast, is substantively different from his claims regarding his participation in additional prayer services and the feast at the end of Ramadan. Although Love's

12

grievance alleges that he failed to receive adequate information regarding potential activities during Ramadan, his grievance does not allege that he was being denied access to additional prayer services or the feast (Doc. 55-2, p. 5). The participation in prayers and the feast is factually different from his access to meal trays. And, at least as to the feast (and possibly Love's claims regarding participation in additional prayer services), it appears that Love had not yet been denied participation when his grievance was submitted shortly after the start of Ramadan (*Id.*). Thus, his grievance regarding the distribution of dietary trays could not serve to exhaust his claims that he was later denied participation in congregational prayers and the feast ending Ramadan. The claims are factually different from those raised in his grievance. *See Jackson*, 105 F. 4th at 959 (The plaintiff failed to exhaust claims regarding the presence of chemical agents in his cell when the plaintiff's grievance only mentioned the use of chemical agents and failed to include the presence of chemicals in the cell as the "nature of the wrong."). Thus, Love failed to exhaust his administrative remedies as to his claims regarding participation in prayers and the feast at the end of Ramadan.

Finally, the Court notes that Love seeks sanctions against Defendants for allegedly violating Federal Rule of Civil Procedure 11. Love argues that Defendants filed their motion in bad faith, that there was no basis for their arguments regarding exhaustion, and that they only sought to distract the Court with "irrelevant ancillary issues" (Doc. 62, pp. 10-13). Contrary to Love's arguments, Defendants presented nonfrivolous arguments regarding Love's exhaustion of his administrative remedies and demonstrated that Love failed to exhaust as to some of his claims. Further, nothing in the record suggests that

Defendants only sought to distract the Court. Because there is simply no basis for Love's contention that Defendants acted in bad faith, his request for sanctions is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 55) is **GRANTED in part and DENIED in part**. Defendants David Mitchell and Rob Jeffreys are **GRANTED** summary judgment, and all Defendants are **GRANTED** summary judgment as to Love's claims regarding participation in prayers and the feast at the end of Ramadan. But Love exhausted his claim regarding his access to dietary trays against Richard Arnold (Count 1) and under RLUIPA (Count 2) and, thus, summary judgment is **DENIED** as to those two claims.

The Clerk of Court is **DIRECTED** to enter judgment accordingly at the end of the case.

**IT IS SO ORDERED.**

DATED:  September 16, 2024

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**