IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ABDUL LOVE,

           Plaintiff,

v.

RICHARD ARNOLD and
LATOYA HUGHES,

           Defendants.

Case No. 3:22-CV-02340-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Currently pending before the Court are a Motion for Leave to Issue Subpoenas (Doc. 70), a Motion for Spoliation Sanctions (Doc. 72), and a Motion for Status (Doc. 78) filed *pro se* by Plaintiff Abdul Love. Also pending before the Court is a Motion to Amend/Correct the Scheduling Order filed by Defendants Richard Arnold and Latoya Hughes (collectively "Defendants"). (Doc. 77). Defendants filed a response to the Motion for Leave to Issue Subpoenas and the Motion for Spoliation Sanctions. (Docs. 71, 76).

Love seeks the issuance of a subpoena for video footage from the two house at Pinckneyville Correctional Center ("Pinckneyville") during Ramadan 2022, spanning April 1, 2022, through April 30, 2022, between 6:00 p.m. and 9:10 p.m. each evening. (Doc. 70). Evidently, Love requested this footage from Defendants through written discovery requests, and Defendants advised Love that they reached out to Pinckneyville's legal counsel to secure the footage. (*Id.*). In addition, Love contends that Defendants knew or should have known that Pinckneyville's legal counsel is under no

obligation to turn over the video footage in question based on a "personal request." (*Id.*). As such, he requests the issuance of a subpoena to be served upon legal counsel for Pinckneyville commanding them to provide the video footage requested. (*Id.*). In response, Defendants assert that they have since received confirmation from the Illinois Department of Corrections ("IDOC") legal counsel stating the Internal Affairs Lieutenant responsible for the video footage did not locate any relevant video. (Doc. 71). Given this revelation, Love's Motion for Leave to Issue Subpoenas (Doc. 70) is now moot.

In light of this information, Love moved for sanctions against Defendants for spoliation of the video footage at issue. (Doc. 72). Love believes that the requested video footage would confirm his allegations that the food carts containing the meals necessary for Love to break his fast sat in excess of two hours after sunset in the foyer forcing Love to use his own food to break his fast. (*Id.*). Attached to his motion, Love emphasizes the May 9, 2022, report from grievance officer Chalene Hale indicating that she reviewed video footage to verify when trays were delivered and served to incarcerated individuals on that cell block. (*Id.* at pp. 6-7). Love charges Defendants with knowing that video footage existed and failing to take reasonable measures to preserve such evidence as required by Federal Rule of Civil Procedure 37(e). (Doc. 72). Alternatively, Defendants urge the Court to deny Love's request for sanctions because the video footage was not within their custody, control, or possession, there was no duty to preserve such footage at the time it was automatically overwritten, and they exhibited no bad faith. (Doc. 76).

A district court has broad discretion concerning the imposition of discovery sanctions. *Park v. City of Chicago*, 297 F.3d 606, 614 (7th Cir. 2002). Under Federal Rule of

Civil Procedure 37(e), parties have a duty to take reasonable steps to preserve electronically stored information in anticipation of litigation. "A spoliation sanction is proper only when a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Conner v. Rubin-Asch*, 793 F. App'x 427, 431 (7th Cir. 2019). In addition, "a showing of bad faith—like destroying evidence to hide adverse information—is a prerequisite to imposing sanctions for missing evidence." *Id.*; *see also Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) ("That the documents were destroyed *intentionally* no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information."). The movant carries the burden to establish the opposing party destroyed the evidence in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013).

Per standard practice, the video footage at Pinckneyville is automatically overwritten by the system when the digital video recorders reach their retention limits—typically within 14 to 25 days—unless the video is specifically downloaded and separately saved. (Doc. 76-1). Typically, video footage will be downloaded and saved as part of an internal investigation if such footage involves an incident or perpetration of a rule violation. (*Id.*). It is also common practice for staff to review video footage on the playback feature, which does not require downloading of the video due to size and storage limitations. (*Id.*). This is especially the case when the video does not demonstrate an active incident, like an assault. (*Id.*).

First, the record before the Court indicates that employees on the Pinckneyville Internal Affairs team, not Defendants, possess and manage the video footage at the facility.

(*Id.*). Importantly, nothing indicates Defendants or their counsel had personal involvement in the lack of preservation of relevant video footage. Defendant Arnold, the Chaplain at Pinckneyville, does not have access to the video footage. (*Id.*). And Defendant Hughes, the Director of IDOC, was not the director at the time of the alleged incidents but became acting director after this action was well underway. (*See* Docs. 37, 76). Love fails to establish that Defendants accessed or controlled the video footage or influenced Pinckneyville's video-retention policy.

Second, Love filed his *pro se* complaint on October 7, 2022, several months after the incidents at issue. (Doc. 1). The Order for Service of Process upon Defendants issued on August 18, 2023. (Doc. 25). Long before either of these dates, the video was overwritten per normal practices at Pinckneyville. In accordance with the standard video retention policy, the video was overwritten within 14 to 25 days, which is before Defendants knew or should have known that litigation was imminent. (Doc. 76-1). Thus, Defendants had no duty to preserve such evidence.

While Love cites his grievance dated April 9, 2022, which included a request to retain the video footage, his grievance was directed at non-parties and did not create a duty for Pinckneyville to retain the video footage at that time. Entertaining every such request by an inmate in the facility would be impractical given the storage and retention difficulties for a building constantly under surveillance. In any event, it is Defendants' anticipation of imminent litigation that creates a duty to take reasonable steps to preserve the video evidence. Love's grievance did not make *Defendants* (or anyone for that matter) aware of imminent litigation and did not trigger such a duty.

Lastly, Love presents no evidence that Defendants destroyed the video to hide illicit conduct or to deprive him of the video. *See* FED. R. CIV. P. 37(e)(2). As described above, Love carries the burden to establish that Defendants destroyed the evidence in bad faith. There is simply nothing in the record to indicate that Defendants did so. The grievance response received by Love suggests that the grievance officer reviewed video evidence, likely via the playback feature closer to the time of the incident. (*See* Docs. 76-1, 76-2). Love does not rebut Defendants' attestations that the video evidence was overwritten, under the prison's standard practices, without first having been downloaded or saved. Thus, he cannot show Defendants destroyed the evidence.

Further, to show bad faith Love must present evidence that the video was destroyed for the purpose of hiding adverse information. He fails to raise any evidence or contention to this effect. Indeed, based on the available information about the video, it does not appear to contain information adverse to Defendants. The grievance response provided an unfavorable determination of Love's claims. (Doc. 76-2). The reviewing grievance officer explained that the footage verified that trays were being delivered and served to individuals in custody. (*Id.*). She also noted the various times of food delivery from a few random dates during Ramadan 2022 and explained that, once dayroom ended and individuals were secured in their cells, the trays were delivered. (*Id.*). Considering this information, paired with the lack of evidence provided by Love, the Court finds that Love has failed to meet his burden of proof in demonstrating bad faith. Accordingly, Love's motion for spoliation sanctions is denied.

For the reasons set forth above, Love's Motion for Leave to Issue Subpoenas

(Doc. 70) is **DENIED as moot**. The Court also **DENIES** Love's Motion for Spoliation Sanctions (Doc. 72). In addition, Defendants' Motion to Amend/Correct the Scheduling Order (Doc. 77) is **GRANTED**. The Court extends the deadlines as follows: Discovery is due on or before **October 3, 2025**. Dispositive Motions are due on or before **November 3, 2025**. As this Order resolves the status of the pending motions, Love's Motion for Status (Doc. 78) is also **DENIED as moot.**

IT IS SO ORDERED.

DATED: August 6, 2025

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**